UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 3:15-CR-00023-LRH-WGC |
| v. | |
| CLAY THOMAS BERGENDAHL, | <u>ORDER</u> |
| Defendant. | |

Before the court is defendant Clay Thomas Bergendahl's sentencing memorandum, which contains objections to the presentence investigation report's ("PSR") calculation of his criminal-history points and its recommended special conditions of supervised release. ECF No. 32.[1] The PSR responds to these objections, but the United States has not filed a separate responsive memorandum.

I.    **Background**

Following an undercover investigation of child-pornography distribution through the Ares Peer-to-Peer ("P2P") file-sharing network, the Washoe County Sheriff's Office obtained a search warrant for an apartment unit in Reno, Nevada. The apartment was home to the subscriber of an internet-service account connected to several IP addresses involved in downloading child pornography on multiple occasions from the Ares P2P network. State and federal agents executed

---

[1] This citation refers to the court's docket number.

the warrant on January 20, 2015. A search of the residence revealed no child pornography, but the resident reported that he had provided his wireless-internet password to his neighbor, Bergendahl.

The agents then spoke to Bergendahl and obtained a search warrant for his apartment that same day. During the subsequent search, agents discovered a laptop computer in Bergendahl's apartment that contained software for the Ares P2P network and search terms specific to child pornography. A forensic examination of the laptop revealed twenty-two videos depicting child pornography. The videos featured prepubescent minors—some as young as approximately one year old—engaged in sexual acts with adults. Some of the images depicted sadistic and/or masochistic behavior.

Bergendahl was arrested and charged by indictment with one count of Receipt of Child Pornography under 18 U.S.C. § 2252A(a)(2), (b). ECF No. 1. He eventually pled guilty to this count without the benefit of a plea agreement. ECF No. 29. Bergendahl then submitted his sentencing memorandum, objecting to the PSR's calculation of his criminal-history points and several recommended special conditions of supervised release. The court heard arguments from the parties on these issues and took the arguments under submission, continuing sentencing until October 25, 2016. ECF No. 35. The court now addresses each of Bergendahl's objections below.

## II.      Criminal-history points

Bergendahl first objects to paragraph forty-seven of the PSR, which attributes two criminal-history points to his past Nevada conviction for the possession of a controlled substance under NRS 453.336. ECF No. 32 at 18. Bergendahl argues that, because he was sentenced to 12–32 months imprisonment *suspended* with a 124-day credit for time served and probation, he should only receive one point under the U.S. Sentencing Guidelines ("USSG" or "guideline(s)"). "[W]here a prior sentence was '*totally* suspended or stayed,' it is treated as a one-point prior sentence under § 4A1.1(c)." *United States v. Fernandez*, 743 F.3d 453, 455 (5th Cir. 2014) (emphasis added) (quoting USSG § 4A1.2(a)(3)).

1    The PSR counters that Bergendahl's sentence was not "totally suspended" because the
2    state court sentenced him to time served and thus did not suspend this portion of his sentence.[2]
3    PSR at 24–25. The PSR highlights two circuit cases in support of its interpretation of
4    Bergendahl's sentence suspension: the Fifth Circuit's opinion in *Fernandez* and the Tenth
5    Circuit's unpublished opinion in *United States v. Minton*, 407 F. App'x 336 (10th Cir. 2011).
6    Both courts held that a suspended sentence that includes credit for time served is not fully
7    suspended and that such a sentence therefore warrants more than one criminal-history point under
8    USSG § 4A1.1.

9    In reaching this conclusion, the Fifth Circuit adopted the Tenth Circuit's reasoning "that
10   the state court 'explicitly took the period of pre-sentence confinement into account' in
11   determining the [defendant's] sentence; accordingly, the confinement was 'part of the punishment
12   ultimately imposed' by the state court." *Fernandez*, 743 F.3d at 456 (quoting *Minton*, 407 F.
13   App'x at 339). The Fifth Circuit thus held that the state court's "language 'Credit for Time
14   Served' necessarily implies that the court accorded a sentence-reducing value to [the defendant's]
15   pretrial confinement . . . ." *Id.* at 457.

16   Bergendahl argues that this reasoning does not apply to Nevada convictions because state
17   law requires courts to include time-served credit in their judgments. Nev. Rev. Stat. §
18   176.105(1)(d) (requiring the judgment of conviction to set forth "[t]he exact amount of credit
19   granted for time spent in confinement before conviction, if any."). He argues that this credit does
20   not indicate that the trial court took his time served into account in suspending his sentence, but
21   that it is instead relevant for other purposes, such as calculating the time he would serve in
22   custody if he violated his probation.

23   He further highlights another practical application addressed in *Griffin v. State*, where the
24   Nevada Supreme Court held that a petitioner's habeas "claim for credit for presentence
25   incarceration is a challenge to the validity of the judgment of conviction" rather than "a challenge
26   to the computation of time served." 137 P.3d 1165, 1166 (Nev. 2006). After reaching this

27
28   _____
     [2]  Because Bergendahl's period of time served exceeded sixty days, he would receive two points
     under § 4A1.1(b) if the PSR is correct that the sentence was only partially suspended.

conclusion, the Court emphasized that its holding "increases the importance of the obligation of the district court, counsel for the State, and the defense to accurately resolve the issue of presentence credit at the time of sentencing." *Id*. at 1170.

The court agrees with Bergendahl. Because Nevada law requires courts to include the time-served credit in the judgment of conviction for a variety of reasons, this court, unlike the Fifth and Tenth Circuits, cannot infer that the state court took Bergendahl's time served into account when deciding to suspend his sentence. Accordingly, his prior conviction must be considered fully suspended under the guidelines, and he will therefore receive only one criminal-history point for this conviction. However, as acknowledged by Bergendahl, this determination does not alter his criminal-history category because he nonetheless has a total of two criminal-history points,[3] which still places him in Category II. His recommended guidelines sentencing range of 135–168 months imprisonment is therefore unaffected.

## III.   Special conditions

Bergendahl also objects to several special conditions that the PSR recommended. A "district court has broad discretion in setting conditions of supervised release, including restrictions that infringe on fundamental rights." *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998). A court "may order a special condition of supervised release that: (1) is reasonably related to the crime, the history and characteristics of the defendant, and the purposes of supervised release, including deterrence, protection of the public, and treatment of the offender; (2) involves no greater deprivation of liberty than is reasonably necessary; and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission." *United States v. Gnirke*, 775 F.3d 1155, 1161 (9th Cir. 2015) (internal citations and quotation marks omitted) (quoting 18 U.S.C. §§ 3553(a), 3583(d)). "'The touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration' of the relevant factors." *Id*. at

---

[3]   Aside from the one criminal-history point attributed to his controlled-substance conviction, Bergendahl received one criminal-history point for a conviction for driving under the influence. PSR at 9.

1168 (Smith, J., concurring) (quoting *United States v. Rudd*, 662 F.3d 1257, 1261 (9th Cir.

2011)). The court will address Bergendahl's objections to each condition.

### A.     Special condition 5: No Contact with Minors

This proposed condition reads as follows:

No Contact with Minors - The defendant shall not *associate* with children under the age of 18, without the consent of a parent or guardian who is aware of the nature of the defendant's background and offense conduct. Furthermore, the association shall only occur in the presence of a responsible adult who is also aware of the nature of the defendant's background and offense conduct. The consent and notifications shall be confirmed and approved by the probation officer in advance. The defendant shall not *loiter* within 100 feet of places primarily used by children under the age of 18. This includes, but is not limited to, school yards, playgrounds, arcades, public swimming pools, water parks, and day care centers. The defendant shall not engage in any occupation, either paid or volunteer, that *caters* to known persons under the age of 18.

PSR at 22 (emphasis added). Bergendahl raises objections to three separate restrictions contained in the condition: (1) the association-with-minors restriction; (2) the employment restriction; and (3) the loitering restriction.

### 1.     Association with minors

Bergendahl argues that the term "associate" is unconstitutionally vague because it "encompasses contact ranging from incidental to more sustained and long term." ECF No. 32 at 19–20. He also argues that this condition is overbroad and would prevent him from interacting with his own children once he is released from prison,[4] thus violating the Ninth Circuit's holding in *United States v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012).

There, the court held that a condition of supervised release preventing the defendant from interacting with his own daughters implicated the "fundamental right to familial association" and thus infringed on a "particularly significant liberty interest." *Wolf Child*, 699 F.3d at 1087. While such conditions are not automatically invalid, the district court must follow an enhanced

---

[4]  Bergendahl has three children, including two who are currently under ten years old and who might still be minors when Bergendahl is released. ECF No. 32 at 20. Bergendahl has relinquished his parental rights, and the two younger children have been adopted. Pursuant to the post-adoption agreement, the adoptive parents will decide whether to allow Bergendahl to visit the children after he is released from prison.

5

procedural requirement: the court "must support its decision to impose the condition on the record with record evidence that the condition of supervised release sought to be imposed is *necessary* to accomplish one or more of the factors listed in § 3583(d)(1) and involves no greater deprivation of liberty than is reasonably necessary." *Id.* at 1082 (emphasis in original).

As an initial matter, it is well established that the term "association" or "associate" is not unconstitutionally vague. In *United States v. Soltero*, the Ninth Circuit held that a condition forbidding a defendant from "associating" with street-gang members was not vague because "[t]he Supreme Court has held that 'incidental contacts'—such as those [the defendant] fears he would be punished for inadvertently engaging in—do not constitute 'association[,]' and . . . with this limitation, 'men of common intelligence' need not guess at the meaning of 'association' in the context" of such a condition. 510 F.3d 858, 866 (9th Cir. 2007) (internal citation omitted) (citing *Arciniega v. Freeman,* 404 U.S. 4, 5 (1971)); *see also United States v. Loy*, 237 F.3d 251, 269 (3d Cir. 2001) (rejecting a nearly identical argument because "it is well established that associational conditions do not extend to casual or chance meetings.").

Turning to Bergendahl's argument regarding contact with his own children, the enhanced procedural requirements discussed in *Wolf Child* are unnecessary in this case because the court does not intend to extend special condition 5 to Bergendahl's current children or his possible future children. While the child pornography found on Bergendahl's computer establishes that he is attracted to young children, there has been no evidence presented or allegation made that he is a danger to his own children. Bergendahl must of course comply with the terms of the post-adoption agreement between himself and his two youngest children's adoptive parents, as well as any related court orders. Special condition 5 will be amended to clarify these points.

It is not clear from Bergendahl's memorandum if he also objects to special condition 5 limiting his association with minors that are not his own children. However, this condition is commonplace in child-pornography cases and has been upheld by the Ninth Circuit. *E.g.*, *United States v. Bee,* 162 F.3d 1232, 1235 (9th Cir. 1998) ("By prohibiting Bee from having contact with children and from loitering near places primarily used by children, the district court properly exercised its broad discretion in setting the terms and conditions of supervised release."); *see also*

*United States v. Stoterau*, 524 F.3d 988, 1008 (9th Cir. 2008). Because Bergendahl has exhibited an attraction to prepubescent children, including child pornography involving violent force, this special condition is necessary in this case.

### 2.    Vagueness: employment and loitering restrictions

Bergendahl next objects to the portion of this condition that prohibits him from seeking an occupation that "caters to known persons under the age of 18." He argues that the term "caters" is vague, contending that it could prohibit him from working at stores like Walmart, which sells children's clothing and toys, at movie theaters, which show some child-oriented films, or at casinos, which commonly have arcades and bowling alleys. Similarly, he argues that the provision prohibiting him from loitering within 100 feet of "places primarily used by children" is vague.

These arguments are unavailing. Turning first to the loitering prohibition, the Ninth Circuit has consistently upheld identical conditions that define the scope of the restriction as places primarily used by children. *E.g.*, *Bee,* 162 F.3d at 1235; *United States v. Hilliard*, 289 F. App'x 239, 240 (9th Cir. 2008) ("[T]his condition is not 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'"); *United States v. Beeman*, 280 F. App'x 616, 619 (9th Cir. 2008).

Similarly, a plain reading of the employment restriction reveals that it does not prohibit Bergendahl from working in any facility that provides goods and services to both adults and children. Like the loitering restriction, this portion of the condition encompasses only facilities primarily used by children. As the United States argued during the sentencing hearing, Bergendahl would not be prohibited from working in a casino but would certainly be prohibited from working in its child-care facility. None of the examples Bergendahl cited would be prohibited by the condition's current language.

Further, numerous circuit courts have upheld similar language in the context of loitering restrictions. *E.g.*, *United States v. Shultz*, 733 F.3d 616, 621 (6th Cir. 2013) ("Nor did the district court commit reversible error in prohibiting Shultz from going near any place where children normally congregate or any business that caters to or targets child customers." (internal brackets

and ellipses omitted)); *United States v. Malenya*, 736 F.3d 554, 565 (D.C. Cir. 2013) (holding that a condition preventing the defendant from "entering into any area where children frequently congregate . . . cannot reasonably and should not be read to proscribe . . . entering areas such as theaters or shopping malls unless those venues are, for example, a children's theater or a mall catering specifically to children); *United States v. Paul*, 274 F.3d 155, 167 (5th Cir. 2001).

The court will therefore impose these portions of special condition 5 with the PSR's recommended language.

### 3.     Broadness: loitering

Finally, Bergendahl raises a separate broadness challenge to the loitering prohibition. He argues that, by prohibiting him from loitering within 100 feet of places primarily used by children, this condition inhibits his "familial association with his current and future children." ECF No. 32 at 22. He again cites to *Wolf Child*, where the Ninth Circuit found that a condition prohibiting the defendant "from being in the company of any child under the age of 18 without prior written approval of a probation officer" was overbroad and unnecessarily imposed "significant restrictions" on his right to free association. 699 F.3d at 1101. In support of this conclusion, the court highlighted the fact that the condition required the defendant "to obtain written permission before taking his daughter to a pediatrician; or meeting one of his daughter's boyfriends before allowing her to go on a date with him; or taking his children to places of worship or other tribal functions, or to family gatherings, or other social affairs." *Id*.

*Wolf Child*, however, does not stand for the proposition that conditions prohibiting association with minors are *per se* impermissible. Rather, the Ninth Circuit found that the prohibition was overbroad in regards to the specific circumstances of that case. There, the defendant was convicted of attempted sexual abuse after he attempted having sex with an intoxicated, unconscious 16-year-old girl when he was 22 years old. *Id*. at 1088. The court found that the condition failed to meet these criteria because they were not "narrowly circumscribed" to address the district court's "concerns that Wolf Child not be in the company of unsupervised young women in circumstances that might lead to or make it possible for him to engage in improper sexual conduct with them." *Id*. at 1102.

For example, the condition prohibited the defendant "from being in the company of any *male* child under the age of 18 (without prior approval from his probation officer), including his nephews or cousins, although there [was] no evidence whatsoever that Wolf Child [had] any sexual interest in young boys or indeed males of any age." *Id*. at 1101 (emphasis in original). In turn, the condition was not "reasonably related to the statutory purposes of deterrence, protecting the public, and rehabilitation while restricting Wolf Child's liberty only so far as [was] reasonably necessary." *Id*. at 1102.

In contrast, special condition 5's prohibitions are tailored to address this court's concerns—based on the type of child pornography that Bergendahl downloaded—that he poses a danger to both male and female children of various ages. The restrictions on Bergendahl's liberty are therefore reasonable, and the court will impose this portion of the condition with the PSR's recommended language.

### 4.    Revised language for special condition 5

Based on the above resolution of Bergendahl's objections, the court will adopt this condition with the following bolded amended language:

> No Contact with Minors - The defendant shall not associate with children under the age of 18, without the consent of a parent or guardian who is aware of the nature of the defendant's background and offense conduct. Furthermore, the association shall only occur in the presence of a responsible adult who is also aware of the nature of the defendant's background and offense conduct. The consent and notifications shall be confirmed and approved by the probation officer in advance. **This restriction does not apply to the defendant's current or future children. The defendant must, however, comply with the terms of the post-adoption agreement between himself and his two youngest children's adoptive parents, as well as any related court orders**. The defendant shall not loiter within 100 feet of places primarily used by children under the age of 18. This includes, but is not limited to, school yards, playgrounds, arcades, public swimming pools, water parks, and day care centers. The defendant shall not engage in any occupation, either paid or volunteer, that caters to known persons under the age of 18.

### B.    Special condition 6: Pornography Prohibition

This proposed condition reads as follows:

> Pornography Prohibition - The defendant shall not possess, own, use, view, or read any material depicting and/or *describing* "sexually explicit conduct" involving children, as defined by 18 U.S.C. 2256(2), or "actual sexually explicit

conduct" involving adults, as defined by 18 U.S.C. 2257(h)(1). This prohibition includes, but is not limited to, computer images, pictures, photographs, books, writings, drawings, videos, or video games. The definition under 18 U.S.C. 2256(2) means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. The definition under 18 U.S.C. 2257(h)(1) means actual, but not simulated, conduct as defined in clauses (a) - (e) above. Furthermore, the defendant shall not patronize any place where the primary purpose is related to such material or entertainment.

PSR at 22 (emphasis added). Bergendahl argues that the term "describes" is vague and "theoretically encompasses literature and art with subject matter that involves contact between minors, such a Romeo and Juliet." ECF No. 32 at 23. He also argues that the condition, by prohibiting his access to material depicting or describing "actual sexually explicit conduct" involving *adults*, is overbroad. Citing the Ninth Circuit's narrowing of a similar (but not identical) condition in *United States v. Gnirke*, Bergendahl argues that the condition prohibits non-pornographic depictions of adults and thus raises First Amendment concerns. Finally, he argues that the restriction on viewing adult pornography is a greater deprivation of liberty than necessary.

The court finds that the term "describing" is not vague. The condition specifies that the pornography restriction extends to books and writings, along with pictures and videos. Therefore, the verbs "depicting" and "describing" merely work together to encompass pornography in every medium. Bergendahl cites no authority to the contrary.

The court also finds that the differences between the special condition at issue in *Gnirke* and the one recommended in the instant case remedy the constitutional concerns that the Ninth Circuit addressed in *Gnirke*. There, the condition defined "sexually explicit conduct" solely by reference to 18 U.S.C. § 2256(2), which defines the term for purposes of outlawing child pornography. This definition includes both "actual" and "simulated" conduct. 18 U.S.C. § 2256(2)(A). By relying on this statute in defining *adult* pornography and thereby including *simulated* sexual conduct, the Ninth Circuit found that the condition's language would have "prevent[ed] Gnirke from viewing Oscar-winning films like *American Beauty* and *Brokeback Mountain*, television shows like *The Wire*, or sexually explicit works of art that appear in museums . . . ." *Gnirke*, 775 F.3d at 1165.

1    Further, the condition prohibited the defendant from entering an establishment where such

2    materials were available. Due to the prohibition's inclusion of simulated adult sexual conduct, the

3    Ninth Circuit concluded that "[t]he condition appropriately prevent[ed] Gnirke from entering strip

4    clubs and X-rated video stores—but it also prevent[ed] him from setting foot inside his local

5    Walmart, a library that loans R-rated movies, or a movie theater showing an R-rated film with a

6    simulated sex scene (even if Gnirke enter[ed] the theater to see a different film)." *Id*. at 1162. The

7    court highlighted this fact in distinguishing the condition from similar conditions upheld in prior

8    Ninth Circuit cases, reasoning that the added restriction not only prohibited the defendant from

9    accessing child and adult pornography, but it also "severely restricted [him] in where he may

10   shop, acquire information, and view art or entertainment." *Id*. at 1164.

11   Here, the PSR's recommended special condition explicitly states that "'actual sexually

12   explicit conduct' involving adults," which it defines by reference to 18 U.S.C. § 2257(h)(1),[5]

13   "means actual, but not simulated, conduct . . . ." In turn, the condition does not prohibit

14   Bergendahl from owning or viewing movies or television series—like those the Ninth Circuit

15   cited—that feature nudity and *simulated* sexual conduct. The condition therefore prohibits him

16   from entering strip clubs and X-rated video stores rather than a Walmart, library, museum, or

17   movie theater. Accordingly, the condition comports with Ninth Circuit precedent and does not

18   restrict Bergendahl's access to non-pornographic materials.

19   Finally, the court finds that restricting Bergendahl's access to legal adult pornography is

20   necessary for his rehabilitation and for public safety. For example, the psychological-consultation

21   report that Bergendahl submitted with his sentencing memorandum discusses him viewing

22   increasing amounts of adult pornography until he became "desensitized" to it "and began seeking

23   more deviant pornography," including child pornography. ECF No. 33 at 13.

24   Based on the foregoing, the court will impose special condition 6 with the PSR's

25   recommended language.

26

27   [5]   This statute specifies the record-keeping requirements for content depicting sexually-explicit
     conduct, which it defines by reference to the conduct enumerated in § 2256(A). However, § 2257
28   explicitly excludes simulated conduct.

**C.      Special condition 8: Computer-Pornography Prohibition**

This proposed condition prohibits Bergendahl from possessing "any matter that is pornographic, as defined in 18 U.S.C. § 2256(2), or that depicts, suggests, or alludes to sexual activity of minors under the age of eighteen (18)." PSR at 22. Bergendahl argues that this recommended condition is duplicative of special condition 6 and also too broadly defines pornography. Because special condition 6 restricts both adult and child pornography in all medium, including computer images, the court will not impose the redundant restriction in special condition 8.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that defendant Clay Thomas Bergendahl's objections to the presentence investigation report are sustained in-part and overruled in-part in accordance with this order.

IT IS SO ORDERED.

DATED this 14th day of October, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE